## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ABRIA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS, *Plaintiff*, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, AND ITS AFFILIATES, ABC COMPANIES 1-100, AND JOHN DOES 1-100, *Defendants.* | No. 3:23-cv-830 (VAB) |

## RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Abria Medical Laboratories, LLC, d/b/a Genesis Diagnostics ("Genesis" or "Plaintiff") filed this Amended Complaint by and through its attorneys against Cigna Health and Life Insurance Company, and its affiliates, ABC Companies 1-100 and John Does 1-100 ("Cigna" or "Defendants") for breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), violation of the Families First Coronavirus Response Act ("FFCRA") and Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Count III), fraudulent and negligent misrepresentation, equitable and promissory estoppel, unjust enrichment (Count IV), violation of the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act (Count V), and violation of ERISA § 502(a)(1)(B) and 29 U.S.C. 1132(a)(1)(B)– Claim for Benefits (Count VI).

Defendants have filed a motion to dismiss all counts of Plaintiff's Amended Complaint. Mot. To Dismiss the Amd. Compl. By Cigna, ECF No. 37 ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED**, and this case is **dismissed with prejudice.**

I.       FACTUAL AND PROCEDURAL BACKGROUND

   A.  Factual Allegations

From the start of the COVID-19 pandemic, Genesis allegedly offered diagnostic testing for the detection of the virus that causes COVID-19, as part of their commitment to combat the COVID-19 pandemic. Amended Complaint, ECF No. 32 ¶ 20 ("Amd. Compl.").

Genesis alleges that these testing services were medically necessary and appropriate, according to recognized medical standards and standards announced by Congress and the Department of Health and Human Services. *Id.* ¶ 21.

Genesis alleges that Cigna blatantly disregarded their express obligation to pay Genesis. *Id.* ¶ 13. Genesis alleges that Cigna engaged in a years-long campaign designed to deprive Plaintiff of millions of dollars rightfully owed it for services rendered to Cigna's subscribers/members. *Id.* ¶ 14. Genesis also alleges that, to advance this campaign, Cigna failed to respond at all to properly submitted claims or manufactured from whole cloth some other bases to improperly refuse to make payment to Plaintiff. *Id.*

Cigna allegedly provided the following meritless reasons for refusing to process Genesis's claims for payment: (i) lack of adequate claim information provided by Genesis; (ii) untimely filing of claims; and (iii) lack of coverage by the subscriber/member for the services provided. *Id.* ¶ 15.

According to Genesis, this alleged refusal to process and pay on these bases was groundless and constitutes a material breach of Cigna's payment obligations. *Id.* ¶ 16.

Congress allegedly prohibited health plans and health insurance issuers from imposing any prior authorization or other medical management requirements on testing for the diagnosis of COVID-19. *Id.* ¶ 17. And Cigna's actions allegedly were the antithesis of what Congress intended. *Id.*

Cigna allegedly has failed to pay or underpaid Genesis for COVID-19 diagnostic testing that Genesis has provided and continues to provide to Cigna's subscribers and/or members. *Id.* ¶ 18. Instead, Defendants allegedly violated the FFRCA and CARES Act and acted in bad faith by erecting hurdles to payment without justification and/or for immaterial reasons unrelated to the medical necessity of the testing. *Id.*

Genesis allegedly had every expectation that Cigna would honor their obligations and properly reimburse Genesis for the COVID-19 testing services it provided to Cigna's subscribers and/or members. *Id.* ¶ 19. Genesis allegedly has been harmed by Cigna's failure to pay and/or underpayment of valid COVID-19 testing claims that Genesis submitted to Cigna for reimbursement for services to Cigna's subscribers/members. *Id.*

According to Genesis, Cigna's alleged failure to properly reimburse for COVID-19 testing services violates the reimbursement rules set out in the text of the FFCRA and CARES Act and in a series of "Frequently Asked Questions" ("FAQs") documents issued and publicly posted by the federal Department of Health and Human Services ("HHS"). *Id.* ¶¶ 22-28.

Cigna allegedly has a duty to engage in good faith and fair dealing, and allegedly breached these duties, causing Genesis to suffer damages.[1] *Id.* ¶ 29.

---

[1] Specifically, Genesis alleges that "In New Jersey, Defendants have a duty to acknowledge and promptly adjudicate claims, in addition to their duties to engage in good faith and fair dealing . . .". The Court acknowledges that this is most likely a typo that is left over from this case's former procedural posture in the District of New Jersey. The State of Connecticut does not impose such a "duty to acknowledge and promptly adjudicate claims," however it does impose a duty to engage in good faith and fair dealing. *See Hoskins v. Titan Value Equities Group, Inc*., 749 A.2d 1144, 1146 (Conn. 2000) ("It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship.).

### B. Procedural History

On September 20, 2022, Genesis filed a Complaint against Cigna in the Superior Court of the State of New Jersey, Bergen County, Law Division. *Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics v. Cigna Health and Life Insurance Company, and its Affiliates, ABC Companies 1-100 and John Does 1-100*, Case No. BER-L-005079-22; *see* Not. of Removal, ECF No. 1 at 1-2.

On November 1, 2022, Cigna filed a notice of removal from the Superior Court of the State of New Jersey-Bergen County to the District Court of New Jersey. Not. of Removal, ECF No. 1.

On November 22, 2022, Cigna filed a motion to dismiss the Complaint, or in the alternative, transfer venue in the District Court of New Jersey. Mot. to Dismiss Compl. of in the Alternative Transfer Venue by Cigna, ECF No. 6.

On January 20, 2023, Genesis filed a brief in opposition to Cigna's motion to dismiss in the District Court of New Jersey. Brief in Opp'n by Genesis, ECF No. 10.

On February 14, 2023, Cigna filed a reply brief to Genesis's brief in opposition in the District Court of New Jersey. Reply Brief to Opp'n to Mot., ECF No. 13.

On March 16, 2023, Judge Evelyn Padin of the District of New Jersey granted Cigna's motion to dismiss, to the extent that it required transfer of this case to the District of Connecticut. Order Granting Mot. to Dismiss, ECF No. 16.

On March 16, 2023, the District of New Jersey transferred this case to the District of Connecticut. ECF No. 17.

On June 20, 2023, this Court filed a notice that "any pending motions at the time of transfer must be refiled in our district." ECF No. 22.

4

On September 18, 2023, Cigna refiled their motion to dismiss the Complaint. Mot. to Dismiss Compl. per the Court's 6/20/2023 Notice 22 by Cigna, ECF No. 28.

On October 17, 2023, Genesis filed a motion to amend their Complaint. Motion to Amend/Correct, ECF No. 30.

On October 18, 2023, the Court granted Genesis' motion to amend their Complaint. Order Granting Motion to Amend/Correct, ECF No. 31.

On October 18, 2023, Genesis filed their Amended Complaint. Amd. Compl.

On January 8, 2024, Cigna filed a motion to dismiss the Amended Complaint. Mot.

On February 12, 2024, Genesis filed a memorandum in opposition of Cigna's motion to dismiss. Memo in Opp'n re Mot. to Dismiss Amd. Compl., ECF No. 41 ("Opp'n").

On March 11, 2024, Cigna filed a reply to Genesis' memorandum in opposition of Cigna's motion to dismiss. Reply to Response to Mot. to Dismiss Amd. Compl., ECF No. 44 ("Reply").

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

6

### III.    DISCUSSION

In its motion to dismiss, Cigna argues that all counts of Genesis's Amended Complaint

should be dismissed for multiple reasons:

> Plaintiff has not met the pleading standards established by the United States Supreme
> Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*,
> 556 U.S. 662, 678-80 (2009); (2) Plaintiff does not have a private right of action under
> the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid,
> Relief, and Economic Security Act ("CARES Act"); (3) each of Plaintiff's state law
> claims fails to state any claim upon which relief may be granted as a matter of law; (4)
> Plaintiff's cause of action for benefits under the Employee Retirement Income
> Security Act of 1974 ("ERISA") fails because Plaintiff does not have ERISA
> standing, the Amended Complaint fails to allege facts establishing a plausible
> wrongful denial of benefits claim, and the Amended Complaint fails to allege
> exhaustion of administrative remedies; and (5) Plaintiff's state law claims are
> expressly preempted by ERISA to the extent they involve claims under ERISA-
> governed Plans.

> Mot. at 1–2.

The Court will address each of these arguments and counts in turn.

### A.    Count One: The Breach of Contract Claim.

Under Connecticut law, a breach of contract claim has four elements: (1) the formation of

an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and

(4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540

(Conn. 2014).

A contract can be formed expressly or by implication. "An implied contract is an

agreement between the parties which is not expressed in words but which is inferred from the

acts and the conduct of the parties." *Brighenti v. New Britain Shirt Corp.*, 356 A.2d 181, 183

(Conn. 1974). "[T]he existence of an implied in fact contract is a question of fact." *Conn. Light*

*& Power Co. v. Proctor*, 152 A.2d 470, 478 (Conn. 2016).

Cigna argues that Genesis's breach of contract claim should be dismissed because the "Amended Complaint fails to allege the existence of any such contract or a single fact establishing that any meeting of the mind existed between Plaintiff and Cigna regarding any of the services at issue." Memorandum in Support of Defendant's Mot. to Dismiss Amd. Compl., ECF. 37-1 ("Mem.") at 17.

In response, Genesis argues that (1) under a notice-pleading standard, a plaintiff need not provide a contract or its terms with its complaint, (2) plaintiff has alleged existence of a controlling agreement in its complaint, and (3), when there is an alleged long-standing course of dealing between the parties that confirms the presence of an agreement, contract claims should survive a motion to dismiss. Opp'n at 6–7.

The Court disagrees.

As there is no express contract, *see* Mem. at 8 ("Even though it has admitted the absence of an express contract with Cigna, Plaintiff nonetheless asserts that Cigna breached some other (unidentified) contract."), the Court's focus turns to whether an implied contract existed, and if so, whether that implied contract has been breached. A contract can be implied under those circumstances where "a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor . . ." *Janusauskas v. Fichman*, 826 A.2d 1066, 1073 (Conn. 2003).

The services "rendered" by the plaintiff must be "at the request of the defendant, under an expectation that they were to be paid for and [] the defendant either intended to pay for them or the services were rendered under such circumstances that the defendant knew, or, as a reasonable person, should have known, that the plaintiff did expect payment." *Conn. Light & Power Co.,* 152 A.3d at 479. In the absence of a "request of the defendant," there is no true offer. *See Auto Glass*

*Exp., Inc. v. Hanover Ins. Co.*, 975 A.2d 1266, 1272 (Conn. 2009) ("This court has long held that an offer imposes no obligation upon either party, until it is accepted by the offeree, according to the terms in which the offer was made." (citations and internal marks omitted)). And "[a]n offer can be accepted by the rendering of a performance only if the offer invites such an acceptance." *Id.* Moreover, "in order to accept the offer by rendering performance, the offeree must give . . . that for which the offeror bargains. If it is in any material respect different, there is no contract." *Id.* (citation and internal marks omitted).

Here, Genesis alleges that they rendered services to Cigna's members, Amd. Compl. ¶ 16, and expected to be paid for these services, *id.*, but Cigna has been denying their entitlement to relief. *Id.* These allegations alone are not enough, and are little "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). More fundamentally, there is no "offer" from Cigna to which Genesis is responding. Indeed, Cigna has repeatedly rejected an invitation to contract with Genesis, *see* Amd. Compl. ¶¶ 13–16, 30–33 (detailing a history of allegedly unpaid or improperly paid claims by Cigna), rather than having established an implied contract. *Cf.*, *Atl. Neurosurgical Specialists, P.A. v. MultiPlan, Inc.*, No. 20 CIV. 10685 (LLS), 2023 WL 160084, at *5 (S.D.N.Y. Jan. 11, 2023) (dismissing breach of implied contract claims in part because "[a] history of paying the rate on some claims does not amount to giving binding assent to always pay the Contract rate").

In the absence of these basic contractual elements, either express or implied, Genesis's breach of contract claim fails.

Accordingly, the Court will grant Cigna's motion to dismiss Genesis's breach of contract claim.

### B. Count Two: The Breach of Duty of Good Faith and Fair Dealing Claim

Because the Court finds that no implied-in fact or express contract existed, Genesis's breach of duty of good faith and fair dealing claim necessarily fails. *See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961, 990 (Conn. 2013) (finding that a claim for a beach of the duty of good faith and fair dealing requires a contractual relationship); see *id.* at 987 ("Because the covenant of good faith and fair dealing only requires that neither party to a contract do anything that will injure the right of the other to receive the benefits of the agreement, it is not implicated by conduct that does not impair contractual rights." (internal quotation marks omitted)).

Accordingly, the Court will grant Cigna's motion to dismiss Genesis's breach of duty of good faith and fair dealing claim.

### C. Count Three: The CARES Act and FFCRA Claims

The CARES Act and FFCRA both include directions about how diagnostic testing should be covered or reimbursed. The relevant provisions of the FFCRA are:

> (a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage ... shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services furnished during any portion of the emergency period ... beginning on or after the date of the enactment of this Act:

> (1) In vitro diagnostic products ... for the detection of SARS–CoV–2 or the diagnosis of the virus that causes COVID–19 that are approved, cleared, or authorized ... and the administration of such in vitro diagnostic products.

> (2) Items and services furnished to an individual during …[medical] visits that result in an order for or administration of an in vitro diagnostic product described in paragraph (1), but only to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product.

(b) ENFORCEMENT.—The provisions of subsection (a) shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans and health insurance issuers offering group or individual health insurance coverage . . . .

(c) IMPLEMENTATION.—The Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury may implement the provisions of this section through sub-regulatory guidance, program instruction, or otherwise.

Families First Coronavirus Response Act, Pub. L. No. 116-127 § 6001(a)–(c), 134 Stat. 178, 201–02 (2020)

The relevant provisions of the CARES Act are:

(a) REIMBURSEMENT RATES.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116–127) with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:

(1) If the health plan or issuer has a negotiated rate with such provider … such negotiated rate shall apply throughout the period of such declaration.

(2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.

(b) . . . (1) . . . each provider of a diagnostic test for COVID–19 shall make public the cash price for such test on a public internet website of such provider.

(2) CIVIL MONETARY PENALTIES.—The Secretary of Health and Human Services may impose a civil monetary penalty on any provider any provider of a diagnostic test for COVID–19 that is not in compliance . . .

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 § 3202(a)–(b), 134 Stat. 281, 367 (2020)

Cigna argues that Genesis's FFCRA and CARES Act claim must fail because neither "FFCRA nor the CARES Act creates an express private right of action for providers to sue health plans for Covid test payments," nor has any court found an implied private right of action. Mem at 24–25.

Genesis responds by arguing that there is an implied private right of action created by the statutes' mandatory coverage and payment provisions in both the FFCRA and CARES Act for providers to sue for the statutorily mandated reimbursement. Opp'n at 10.

The Court disagrees.

Many district courts and the Ninth Circuit have rejected the view that a private right of actions exists under the FFCRA and CARES Act. *See e.g.*, *Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 3:22-CV-00064 (KAD), 2023 WL 2631811, at *3 (D. Conn. Mar. 24, 2023) (citing and following nine other courts who found that the FFCRA/CARES Act do not carry an implied private cause of action); *Diagnostic Affiliates of Ne. Hou, LLC v. Aetna*, *Inc.*, 654 F. Supp. 3d 595, 611 (S.D. Tex. 2023) (disavowing its previous decision in *Diagnostic Affiliates of Ne. Hou, LLC v. United Healthcare Servs., Inc.,* No. 2:21-CV-00131, 2022 WL 214101 (S.D. Tex. Jan. 18, 2022), to find that the FFCRA/CARES Act do not create an implied private cause of action); *Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-CV-33 (KAD), 2023 WL 2631798, at *3 (D. Conn. Mar. 24, 2023) (holding that no private right of action exists under the FFCRA/CARES Act); *Genesis Lab'y Mgmt. LLC v. United Health Grp., Inc.*, Civ. No. 21-12057, 2023 WL 2387400, at *3 (D.N.J. Mar. 6, 2023) (same); *Biodiagnostic Labs, Inc. v. Aetna Health Inc. (New York)*, No. 23-CV-9570 (BMC), 2024 WL 3106169, at *4 (E.D.N.Y. June 23, 2024) (same); *Abria Medical Laboratories, LLC D/B/A Genesis Diagnostics v. Harvard Pilgrim Health Care, Inc., and Health Plans, Inc.*, No. CV 24-158, 2024 WL 4173781, at *7 (E.D. Pa. Sept. 12, 2024) (same); *Aventus Health, LLC v. UnitedHealthcare, Inc.*, No. 6:22-CV-2408-PGB-EJK, 2023 WL 11724679, at *4 (M.D. Fla. Sept. 8, 2023) (same); *Saloojas, Inc. v. Aetna Health of California, Inc.*, 80 F.4th 1011, 1016 (9th Cir. 2023) ("We therefore hold that the

CARES Act does not grant a private right of action to a provider of COVID-19 diagnostic testing to enforce § 3202.").

Judge Arterton's decision in *Murphy Medical Associates, LLC v. Cigna Health and Life Insurance Company* is instructive as to why a plaintiffs' claims of a private right of action have so routinely been denied. No. 3:20CV1675(JBA), 2022 WL 743088 (D. Conn. Mar. 11, 2022). There, Judge Arterton listed the relevant factors under the Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66 (1975):

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

> *Murphy Med. Assocs.*, 2022 WL 743088, at *4 (citing *Cort*, 422 U.S. at 78).

> Judge Arterton further (and properly) reasoned that, beyond the *Cort* factors, "without Congressional intent for a private right and remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.""

> *Murphy Med. Assocs.*, 2022 WL 743088, at *4 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)).

Judge Arterton then considered whether that intent existed with the relevant statutes and determined that the: "Plaintiff has not identified anything in the text or structure of the CARES Act which suggests that Congress intended to afford them with a privately enforceable remedy." *Murphy Med. Assocs.*, 2022 WL 743088, at *5. In doing so, Judge Arterton rejected arguments "that may provide a good policy reason to create a private right of action, [but] do[] not provide an indication that Congress intended to create such a right." *Murphy Med. Assocs.*, 2022 WL 743088, at *5 (citation omitted).

That reasoning applies with equal force here. Absent any indication of congressional intent to create a private right of action for insurers in § 6001 of the FFCRA and § 3202 of the CARES Act, no such private right of action exists. *See id.* at *6 (concluding that a private right of action does not exist in either § 6001 of the FFCRA nor § 3202 of the CARES Act while being mindful that the "Supreme Court 'has increasingly discouraged the recognition of implied rights of actions without a clear indication of congressional intent'" (quoting *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018))).

Accordingly, the Court will grant Cigna's motion to dismiss Genesis' CARES Act and FFCRA claims.

### D.  Count Four: The Equitable and Promissory Estoppel Claims[2]

Connecticut does not recognize equitable estoppel as a cause of action, but rather as a special defense. *See, e.g.*, *Covey v. Comen*, 698 A.2d 343, 345 n.5 (Conn. App. Ct. 1997) ("[E]stoppel is generally not considered a cause of action, but rather is pleaded as a special defense."); *Dickau v. Town of Glastonbury*, 242 A.2d 777, 780 (Conn. 1968) ("[E]quitable estoppel is available only for protection and cannot be used as a weapon of assault."). As a result, Genesis does not have a viable equitable estoppel claim under Connecticut law. The Court thus turns to a review of the alleged promissory estoppel claim.

"[U]nder the doctrine of promissory estoppel, [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such forbearance is binding if injustice can be avoided only by enforcement

---

[2] Genesis withdrew its claim for Fraudulent and Negligent Misrepresentation, so only the Equitable and Promissory Estoppel Claim exist for count four. *See* Opp'n at 13 ("Plaintiff acknowledges at this time that the actual allegations contained in Count Four do not adequately allege a claim for fraudulent or negligent misrepresentation. As such, Plaintiff withdraws any purported claim for fraudulent or negligent misrepresentation from this count, without prejudice to later amend its pleadings should relevant facts be disclosed at a later date during discovery.").

of the promise." *TD Bank, N.A. v. Salce*, 169 A.3d 317, 324 (Conn. App. Ct. 2017) (quoting *Bellsite Development, LLC v. Monroe*, 155 Conn. App. 131, 153A-53B, 122 A.3d 640, cert. denied, 318 Conn. 901, 122 A.3d 1279 (2015)). There must be "a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Id.* Indeed, "a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, [the party] had not reason to expect any reliance at all." *Id.* The "promise must reflect a present intent to commit as distinguished form a mere statement of intent to contract in the future. . . . [A] mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance . . . ." *Id.* (citations and internal quotation marks omitted).

Above and beyond this essential element, "the existence of a clear and definite promise, a plaintiff asserting a claim of promissory estoppel must also establish two additional elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Id.* (citations and internal quotation marks omitted).

Cigna argues that Genesis's promissory estoppel claim should be dismissed for two reasons. First, Genesis's estoppel claims are based on allegations of intentional misrepresentation, and therefore must satisfy the heightened pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). Under the heightened pleading standard, the allegations of fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel.*

*Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (internal citation omitted). Second, even if the heightened pleading standard does not apply, Cigna argues that Genesis failed to state a valid claim under the traditional pleading standards. Mem. at 27–28; Reply at 9.

Genesis responds by arguing that they have successfully pled a claim for both promissory and equitable estoppel because their reliance on Cigna's course of conduct induced Genesis to continue providing healthcare services that were then not compensated. Opp'n at 14–15 & 14 n.4.

The Court disagrees.

While other courts have held that, if promissory estoppel claims are based on intentional misrepresentations or knowingly false promises, Rule 9(b) applies, *see Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949–50 (7th Cir. 2013) (finding that a promissory estoppel claim required heightened pleading under Rule 9(b)); *id.* at ("The district court also dismissed appellant's seventh claim, 'Promissory Estoppel . . .' for failure to meet the heightened pleading standard that Rule 9(b) imposes. Again, we agree"); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 269–74 (3d Cir. 2006) (finding that claims that "sound in" fraud rather than negligence are subject to Rule 9(b)), this Court need not reach that conclusion. Genesis's promissory estoppel claim fails under the regular pleading standard.

Genesis "must allege facts to show the existence of a clear and definite promise which a promisor could have reasonably expected to induce reliance." *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 11 (D. Conn. 2019) (internal quotation marks omitted) (citing *McKinstry v. Sheriden Woods Health Care Ctr., Inc.*, 994 F. Supp. 2d 259, 266 (D. Conn. 2014), and *Stewart v. Cendant Mobility Servs. Corp.*, 837 A2d 736

(Conn. 2003)). A clear and definite promise must be a promise that reflects a "present intent to commit" to contract. *TD Bank, N.A. v. Salce*, 169 A.3d 317, 325 (Conn. App. Ct. 2017); *Stewart v. Cendant Mobility Servs. Corp.*, 837 A.2d 736, 742 (Conn. 2003) ("[T]he promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future.").

There is no such "clear and definite promise" by Cigna to pay Genesis's alleged claims. Indeed, as Genesis's pleading concedes, Cigna "engaged in a years-long campaign" of denying Genesis's claims, Am. Compl. ¶ 14, which demonstrated that Cigna "do[es] not intend to reimburse [Genesis] for providing testing services." Amd. Compl. ¶ 49. *Cf. TD Bank, N.A.*, 169 A.3d at 326 ("Because the defendant did not dispute, in his affidavit or otherwise, the plaintiff's claim that he initially stopped making payments on the note in 2011, he could not successfully assert that he stopped making his payments in 2014 in reliance on an alleged loan modification offered or discussed for the first time in that year."). Put another way, if Genesis knew that Cigna had not been paying for these services, Genesis cannot plausibly allege that Cigna had made a "clear and definite promise" to pay for these services. *See Iqbal*, 556 U.S. at 679 (recognizing that "only a complaint that states a plausible claim for relief survives a motion to dismiss.").

Accordingly, the Court will grant Cigna's motion to dismiss Genesis' equitable and promissory estoppel claims.

### E.  Count Five: The Unjust Enrichment Claim

Unjust enrichment is "a broad and flexible remedy," "[w]ith no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable." *Vertex, Inc. v. City of Waterbury*, 898 A.2d 178, 190 (Conn. 2006). In order to recover for unjust enrichment, a plaintiff "must prove (1) that the defendants were benefited, (2)

that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Id.*

 "A claim for unjust enrichment is an equitable claim. In matters of equity, the court is one of conscience which should be ever diligent to grant relief against inequitable conduct, however ingenious or unique the form may be." *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 970 A.2d 592, 615 (Conn. 2009). In analyzing a claim of unjust enrichment, the Court must "examine the circumstances and the conduct of the parties" and determine "what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable." *Id.* at 451 (internal citations and quotations omitted); *see also Greenwich Contracting Co., Inc. v. Bonwit Constr. Co., Inc.*, 239 A.2d 519, 523 (Conn. 1968) ("[T]he word 'unjustly' as used in the equitable maxim that one shall not be allowed unjustly to enrich himself at another's expense means unlawfully.").

Cigna argues that Genesis cannot succeed on a claim for unjust enrichment because the insured beneficiaries derived the benefit instead of Cigna itself. Reply at 9–10.

In response, Genesis argues that it has sufficiently pled an unjust enrichment claim because the Complaint does allege benefits conferred upon Cigna through its members like laboratory services. *See* Opp'n at 16–17.

The Court disagrees.

Under Connecticut law, recovery for unjust enrichment is proper if "the defendant was benefited, the defendant did not pay for the benefit and the failure of payment operated to the detriment of the plaintiff." *Russell v. Russell*, 882 A.2d 98, 111 (Conn. App. Ct. 2005) (citation omitted).

Courts in this District and elsewhere have repeatedly held that "providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds." *Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-CV-33 (KAD), 2023 WL 2631798, at *8 (D. Conn. Mar. 24, 2023); *see also MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *10 (D. Conn. May 7, 2019) (collecting cases) (dismissing an unjust enrichment claim by relying on multiple courts that have held that "providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to insureds"). The reasoning applied by these other courts to similar claims also applies here.

To properly allege a claim for unjust enrichment, a plaintiff must show that the defendant profited at the plaintiff's expense. *Geriatrics, Inc. v. McGee*, 208 A.3d 1197, 1211 (Conn. 2019) ("A plaintiff may recover for unjust enrichment when a contract remedy is unavailable, to the extent that the defendant has unjustly profited at the plaintiff's expense."). But Cigna did not profit or benefit from Genesis's services, its members were the beneficiaries of Cigna's service; Cigna instead received an obligation to pay. *See Murphy Medical*, 2023 WL 2631798, at *6 ("The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured – which hardly can be called a benefit." (citation and internal marks omitted)).

Because Genesis does not allege a benefit actually accrued by Cigna, Genesis's unjust enrichment claim fails as a matter of law.

Accordingly, the Court will grant Cigna's motion to dismiss Genesis's unjust enrichment claim.

**F. Count Six: The Connecticut Unfair Trade Practices Act ("CUTPA") and**

**Connecticut Unfair Insurance Practices Act ("CUIPA") Claims[3]**

A plaintiff may bring a private cause of action under the Connecticut Unfair Trade Practices Act, "CUTPA," to enforce alleged violations of the Connecticut Unfair Insurance Practices Act, "CUIPA." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879 (VLB), 2015 WL 6675532, at *5 (D. Conn. Oct. 30, 2015) (citing *Mead v. Burns*, 509 A.2d 11, 18 (1986)). CUTPA/CUIPA claims "are premised on finding a breach of contract." *Kim v. State Farm Fire & Cas. Ins. Co.*, 751 Fed. App'x 127, 128 n.1 (2d Cir. 2018); *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 416 (D. Conn. 2017) ("[A] claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of contract."); *Zulick v. Patrons Mut. Ins. Co.*, 949 A.2d 1084, 1091–92 (Conn. 2008) ("The foregoing analysis disposes of the plaintiffs' claim that the trial court improperly rendered summary judgment in favor of the defendant on the plaintiffs' CUTPA and CUIPA claims. Because we have concluded that the defendant's interpretation of the policy's coverage limitation was correct, there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation of the statutes.").

In determining whether a practice violates CUTPA, the criteria set out in the Federal Trade Commission's so-called cigarette rule guides the inquiry:

(1) '[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or

---

[3] In response to Cigna's motion to dismiss on this claim, Genesis does not substantively respond to Cigna's claim, but rather states that they will file a separate motion seeking leave to amend its claim for a violation of CUTPA/CUIPA. Opp'n at 17–18. The Court will proceed with the analysis of Genesis's CUTPA and CUIPA claims to determine if leave to amend on this claim would beneficial.

> otherwise—in other words, it is within at least the penumbra of some common law,
> statutory, or other established concept of unfairness;
> (2) whether it is immoral, unethical, oppressive, or unscrupulous;
> (3) whether it causes substantial injury to consumers, [competitors or other
> businesspersons].'

*Zulick*, 949 A.2d at 1092 n.11 (quoting *Ventres v. Goodspeed Airport, LLC*, 881 A.2d 937, 969 (Conn. 2005)).

"CUIPA identifies and prohibits a number of 'unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.'" *Kim*, 2015 WL 6675532, at *5 (citing Conn. Gen. Stat. § 38a-316). "Among these are '[u]nfair claim settlement practices' such as 'not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.'" *Id.* (quoting Conn. Gen. Stat. § 38a-316(6)(F)). To prevail on a CUIPA claim, a plaintiff must show that "the unfair settlement practice was committed or performed with such frequency as to indicate a general business practice." *McCulloch v. Hartford Life & Accident Ins. Co.*, 363 F. Supp. 2d 169, 182 (D. Conn. 2005).

Cigna argues that Genesis's CUTPA and CUIPA claims should fail for a host of reasons: (1) Genesis has not alleged that any plan at issue involved "the business of insurance" required under CUIPA, (2) Gensis is a non-party to an insurance contract that cannot assert CUIPA/CUTPA claims, (3) Genesis generally has made conclusory allegations that are insufficient to support Genesis's claims, and (4) Genesis has not alleged a "general business practice" which is necessary under CUIPA.

While the claims may fail for the reasons Cigna listed, the Court finds that Genesis's CUTPA and CUIPA claims fail because Genesis has not sufficiently alleged a breach of contract.

As stated above, CUTPA/CUIPA claims "are premised on finding a breach of contract." *Kim*, 751 Fed. App'x at 128 n.1 (2d Cir. 2018); *Roberts*, 264 F. Supp. 3d at 416 ("[A] claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of

contract."). And, as discussed above, Genesis has failed to properly allege a breach of contract claim. Thus, their CUTPA/CUIPA claims also necessarily fail.

Accordingly, the Court will grant Cigna's motion to dismiss Genesis's Connecticut Unfair Trade Practices Act and Connecticut Unfair Insurance Practices Act Claim.

### G.  Count Seven: The ERISA § 502(a)(1)(B) and 29 U.S.C. § 1132(a)(1)(B) Claims

Under Section 502 of ERISA, a plan participant or beneficiary may bring a civil enforcement action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(2)(B)(8). "A beneficiary is best understood as an individual who enjoys rights equal to the participants to receive coverage from the healthcare plan." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015). The "right to payment" for covered services, however, "does not a beneficiary make." *Id.* at 258 (holding that healthcare providers are not beneficiaries under ERISA).

Generally, only the parties enumerated in Section 502 may sue for relief under ERISA. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action"). A "narrow exception" to this rule exists for "healthcare providers to whom a [participant or] beneficiary has assigned his claim in exchange for health care." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329 (2d Cir. 2011). To assert an ERISA claim, therefore, a

provider must establish a valid assignment of the rights asserted in the complaint that comports with the terms of the benefit plan(s) at issue. *See, e.g., McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) (holding that assignment to out-of-network provider was "a legal nullity" in light of anti-assignment provision in plan).

Cigna makes three arguments for why Genesis's ERISA claims should fail: (1) Genesis does not have statutory standing and has not pled that they have been adequately assigned standing, (2) Genesis failed to allege any facts about an ERISA plan at issue, how ERISA governs that plan, what plan language required payment of the benefits Plaintiff seeks, and why the denial of payment was wrongful, and (3) Genesis failed to exhaust all administrative remedies and does not fall within the futility exception. *See* Mem. at 34–41.

Genesis responds by arguing that (1) they were adequately assigned benefits from their clients, (2) under the FFCRA and CARES Act they did not need to allege ERISA plan terms, and (3) that they do meet the futility exception for administrative exhaustion. *See* Opp'n at 18–21.

The Court agrees with Cigna on the first point, and thus Genesis's ERISA claim fails.

Standard form language of an assignment by numerous assignors is not sufficient to withstand a motion to dismiss, there must be more than mere conclusory statements about the assignment language. *See, e.g.*, *Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20CV1675(JBA), 2022 WL 743088, at *7 (D. Conn. Mar. 11, 2022) ("Pleadings that quote the 'standard form language' of an assignment have been deemed sufficient to withstand a motion to dismiss."); *Murphy Medical Assoc. v. Magnacare LLC*, No. 22-cv-326 (RNC) (D. Conn. Nov. 30, 2023) (text order dismissing plaintiff's claim for ERISA benefits under § 502(a)(1)(B) because the complaint "does not allege facts permitting a reasonable inference that, with regard to the claims for reimbursement encompassed by this count, [Plaintiff] has standing as an

assignee"); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The need for specific assignment language is essential because "[n]ot all ERISA assignments convey the same rights. For example, an assignment may give the assignee the right to bring only a claim for benefits, but not a claim for breach of fiduciary duty." *Rojas*, 793 F.3d at 258 (2d Cir. 2015).

Because Genesis fails to allege the actual language of the assignment in their Complaint, they fail to allege standing sufficient to permit their ERISA claims. *See Murphy Medical Assoc. v. Magnacare LLC*, No. 22-cv-326 (RNC) (D. Conn. Nov. 30, 2023) (text order dismissing plaintiff's claim for ERISA benefits under §502(a)(1)(B) because the complaint "does not allege facts permitting a reasonable inference that, with regard to the claims for reimbursement encompassed by this count, [Plaintiff] has standing as an assignee); *Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.").

Accordingly, the Court will grant Cigna's motion to dismiss Genesis's ERISA claims.

### H.  The ERISA Preemption of State Law Claims[4]

Section 514(a) of ERISA provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144. The Supreme Court says this preemption is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Insurance Co. v. Dedeaux*,

---

[4] Because the Court above has dismissed Genesis's state law claims, ERISA's preemption of those state law claims is moot. But the Court will briefly address whether Genesis's claims are preempted by ERISA.

481 U.S. 41, 46 (1987) (quotations omitted) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 423 (1981)).

The Second Circuit has held that ERISA preempts those state statutory claims that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee," and preempt those state common law claims that "seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008)

Cigna argues that Genesis's state law claims are preempted insofar as they are challenging non-payment or underpayment for services under an ERISA plan because they would "relate to" ERISA plans. Mem. at 41.

Genesis responds to Cigna by arguing that their state law claims do not relate to ERISA plans because the Amended Complaint "does not claim that Plaintiff was a contracting party to any ERISA plan [and] does not allege that payment is due it according to the terms of an ERISA plan, or even that any relevant ERISA plan provides reimbursement rates for the out-of-network services provided." Opp'n at 22.

The Court agrees with Cigna.

All of Genesis's state common law claims (insofar as they relate to ERISA plans) are premised on Cigna's failure to pay for services provided by ERISA plans and are not premised on some other independent legal duty outside of that denial of payment. And Genesis's state statutory claims are trying to provide an alternative cause of action to collect benefits provided by ERISA plans. Because this failure to pay, or failure to apply benefits, is the basis of all of

these actions, then ERISA preempts them. *See Paneccasio*, 532 F.3d at 114 ("As to state statutory claims, ERISA preempts those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. As to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" (internal citations omitted)); *see also Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-CV-33 (KAD), 2023 WL 2631798 (D. Conn. Mar. 24, 2023) (finding that denied claims under theories of unjust enrichment, breach of contract, and violation of Connecticut Unfair Trade Practices Act were expressly preempted by ERISA).

Accordingly, if Genesis state law claims were to survive, they would be preempted by ERISA.

## I. Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Consistent with the analysis of the various claims above—an analysis consistent with numerous rulings in this District and elsewhere—leave to amend would be futile. Moreover, given the procedural history of this case in state court in New Jersey, the District Court of New Jersey, and now in front of this Court, Genesis has already had multiple oppurtunities to amend the deficiences in their Amended Complaint; yet its pleadings still cannot withstand a motion to dismiss under Rule12(b)(6).

"As a result, in this case, the defendant's interest in the expeditious adjudication of this litigation outweighs the plaintiffs' interest in yet another bite at the proverbial apple. *Rodriguez v. Bear Stearns Companies, Inc.*, No. 07-CV-1816 (JCH), 2009 WL 995865, at *10 (D. Conn. Apr. 14, 2009) (internal quotations omitted).

Accordingly, this case will be dismissed with prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, Cigna's motion to dismiss is **GRANTED**, and this case is

**dismissed with prejudice.**

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 30th day of September, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE